

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2006

# R&J Holding Co v. Redev Auth

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1666

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"R&J Holding Co v. Redev Auth" (2006). *2006 Decisions.* Paper 1700.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1700

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-1666

R & J HOLDING COMPANY; RJ FLORIG INDUSTRIAL COMPANY, INC.,
*Appellants*

v.

THE REDEVELOPMENT AUTHORITY OF THE COUNTY OF MONTGOMERY;
DONALD W. PULVER; GREATER CONSHOHOCKEN IMPROVEMENT CORP.;
TBFA PARTNERS, L.P.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-09530 )
District Judge: Honorable Legrome D. Davis

Submitted Under Third Circuit LAR 34.1(a)
on January 10, 2005

BEFORE: ROTH, CHERTOFF* and RESTANI**, <u>Circuit Judges</u>
(Opinion filed January 31, 2006)

OPINION

---

*This case was submitted to the panel of Judges Roth, Chertoff and Restani. Judge Chertoff resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

**Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

ROTH, Circuit Judge:

This suit was brought beyond time period prescribed by the governing statute of limitations.  For that reason, and others elaborated below, we will affirm the District Court's orders dismissing Appellants' substantive due process claim.

## I. Factual Background and Procedural History

As the facts are well known to the parties, the court gives only a brief description of the facts and procedural posture of the case.

Plaintiff R & J Holding Company is a Pennsylvania partnership that owns property at 110 Washington Street, Borough of Conshohocken, Pennsylvania.  Plaintiff RJ Florig Industrial is a Pennsylvania corporation operating a steel processing business on the premises ("the Florig Property").  Defendant Redevelopment Authority of the County of Montgomery ("RACM") is a state-created public entity.  Defendant Donald Pulver is the principal of the remaining two Defendants:  Greater Conshohocken Improvement Corporation ("GCIC") and TBFA Partners, LP.

In 1986, Defendant RACM entered into an agreement with Defendant GCIC.  RACM agreed to acquire properties by eminent domain, agreed to convey them to GCIC for development, and GCIC agreed to pay all costs incurred and to provide security.  In 1993, RACM entered into a second agreement with GCIC.  RACM agreed to acquire the Florig Property by eminent domain.  GCIC agreed to cover all direct condemnation costs in excess of the Commonwealth's grant.  Under the terms of the agreement, RACM was

2

authorized to file a Declaration of Taking for the Florig Property only on the prior written consent of GCIC. In 1995, RACM entered an agreement with Defendant TBFA: the Surety Agreement. Under the terms of the Surety Agreement, TBFA was assigned all the rights of GCIC under the prior 1993 agreement. TBFA agreed to pay funds necessary for the acquisition of the Florig Property which were not paid by the Commonwealth and TBFA agreed to provide surety that such payments would be forthcoming when they became due.

On July 11, 1996, RACM filed a Declaration of Taking for the Florig Property. Plaintiffs contested the taking in state court proceedings. Plaintiffs filed preliminary objections in the state court proceedings on August 26, 1996, and filed amended preliminary objections on June 4, 1997, seeking to set aside the Declaration of Takings. Plaintiffs alleged that (1) RACM unlawfully delegated its eminent domain authority to Defendant Pulver, a private person; (2) RACM acted in bad faith; and (3) the posted security was inadequate. On December 17, 1998, the Pennsylvania Court of Common Pleas overruled the objections based on unlawful delegation and bad faith, although granting additional security. This decision was appealed. On February 13, 2001, the Commonwealth Court reversed the Court of Common Pleas and held that, *inter alia*, RACM unlawfully delegated its eminent domain authority to Pulver. Neither state court held that Defendants acted with bad faith.

On March 1, 2001, after the Commonwealth Court announced its decision, RACM

3

entered into a final agreement with GCIC and TBFA.[1] That agreement, the March Letter Agreement, stated that RACM "has acted to appeal the decision of the Commonwealth Court" to the Pennsylvania Supreme Court. The Complaint indicates at paragraphs 45 and 49 that RACM filed the appeal on March 13, 2001 – after the March Letter Agreement had been executed. Furthermore, the March Letter Agreement recognized GCIC as RACM's developer with regard to the Florig Property, subject to the limitation that provisions in prior agreements found unenforceable by the Commonwealth Court were of "no further force and effect unless and until a contrary decision is rendered" on appeal. On July 19, 2001, the Pennsylvania Supreme Court denied RACM's petition to appeal.[2]

On December 31, 2002, Plaintiff-Appellants instituted the instant action. In District Court proceedings, they brought a federal due process claim, a federal takings claim, and several state law claims. The federal takings claim was dismissed without prejudice and thereafter pursued in state court proceedings.[3]

---

[1] The date on the letterhead of this agreement was March 1, 2001. But it was countersigned by Defendant Pulver on behalf of the entities he controlled on March 6, 2001. *See* Joint Appx. at A-103 to A-104.

[2] After the Pennsylvania Supreme Court denied RACM's petition to appeal, Plaintiffs in the instant litigation filed a fee petition. The fee petition was granted. Apparently, Appellants recovered $550,000.

[3] On October 26, 2005, the Commonwealth Court ruled that where a *de jure* condemnation is declared unlawful and void, condemnee's remedy under the Eminent Domain Code is limited to reimbursable costs and expenses pursuant to 26 P.S. § 1-408. *R & J Holding Co. v. RDA*, 885 A.2d 643 (PA Cmwlth 2005)

4

Regarding the only remaining federal claim, brought under § 1983, that Defendants violated Plaintiffs' substantive due process rights by unlawfully delegating eminent domain authority to Pulver and to entities he controlled, the District Court held that a two-year statute of limitations applied. Because the Complaint was filed December 31, 2002, violations occurring prior to December 31, 2000, were not actionable.[4] The District Court further held that Plaintiffs knew of their injury "at least by December 17, 1998, when the Court of Common Pleas issued the December Order overruling R & J Holding's preliminary objections to the Declaration of Taking." Dist. Ct. Op. at A-016. Therefore, the Complaint, filed on December 31, 2002, was not timely. Plaintiff-Appellants have taken the position that the statute of limitations did not begin to run until 2001 – when the Commonwealth Court reversed the order of the Court of Common Pleas – thereby finding and clarifying the extent of Appellants' constitutional injuries. The District Court rejected this position.

Furthermore, Plaintiff-Appellants took the position that the March Letter Agreement, executed less than two years prior to their filing the Complaint in this action, constituted a continuing violation, again tolling the statute of limitations. The District Court rejected this argument. The District Court held that the March Letter Agreement on its face only purported to oblige the parties to perform legal acts, or acts later

---

[4] The District Court opinion mistakenly indicated December 31, 1999, rather than December 31, 2000, as the relevant date. This minor error does not change the District Court's analysis.

5

determined to be legal by the Pennsylvania Supreme Court, should the latter overturn any part of the order issued by the Commonwealth Court. Thus, no continuing violation or affirmative acts of unlawful conduct were alleged in the two years prior to filing the Complaint.

Having rejected both federal claims, the District Court declined to take jurisdiction of the remaining state law claims. Plaintiffs sought reconsideration. No relief was granted, although the District Court clarified its prior holding.

Plaintiff-Appellants have appealed to this court.

## II. Jurisdiction and Standards of Review

District Court jurisdiction was founded on 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

The District Court granted Defendant-Appellees' motion to dismiss and denied Plaintiff-Appellants' motion to reconsider. On appeal of a grant of a motion to dismiss, our standard of review is the same as that applied by the District Court. Our standard of review of the District Court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary. We are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. A Rule 12(b)(6) motion should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved.

*See Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).[5]

In District Court proceedings, Plaintiff-Appellants brought a multicount Complaint. Here, on appeal, they only press their substantive due process claim arising from Defendants' unlawful delegation of eminent domain authority to a private individual. "Substantive due process is an area of law famous for its controversy, and not known for its simplicity." *DeBlasio v. Zoning Bd. of Adjustment for the Twp. of W. Amwell*, 53 F.3d 592, 598 (3d Cir. 1995) (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir.1987)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3rd Cir. 2003). Where, as here, a party makes a § 1983 claim alleging violations of federal due process rights by government action depriving a party of property, the party must allege, and later prove, that it was deprived of a property interest by arbitrary or capricious government action. Not all property interests are protected, notwithstanding recognition of the interest in state law. Rather, to state a substantive due process claim in violation of the Fourteenth Amendment as protected by Section 1983, "a plaintiff must have been deprived of a particular quality of property interest." *DeBlasio*, 53 F.3d at 600. The property interest must be in some sense "fundamental" under the United States Constitution, notwithstanding recognition in

---

[5] Generally, "an appeal from a denial of a Motion for Reconsideration brings up the underlying judgment for review, [therefore] the standard of review [on a motion to reconsider] varies with the nature of the underlying judgment." *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552-53 (3d Cir. 1992).

state law. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 140 (3d Cir. 2000). Additionally, plaintiff must allege, and later prove, government conduct that shocks the conscience. *See United Artists*, 316 F.3d at 400-02. A mere improper motive by government officials, even if unrelated to the merits of the administrative determination impinging upon plaintiff's property rights, is insufficient to establish a substantive due process claim. *Id*.

### III. Discussion

As explained above, the District Court held that Plaintiffs knew of their injury "at least by December 17, 1998, when the Court of Common Pleas issued the December Order overruling R & J Holding's preliminary objections to the Declaration of Taking." Dist. Ct. Op. at A-016. Therefore, the Complaint, filed on December 31, 2002, based on a two-year statute of limitations for a § 1983 action, was not timely. Appellants do not contest the application of a two-year statute of limitations periods, but they have taken the position that the statute of limitations did not begin to run until 2001 – when the Commonwealth Court reversed the order of the Court of Common Pleas – thereby finding and clarifying the extent of Appellants' constitutional injuries. The District Court rejected this position. We agree with the position taken by the District Court.

In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court of the United States held that "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983

action.  The question of whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final, before it is judicially reviewable." *Id*. at 192 (citations omitted).  "While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the *initial* decisionmaker has arrived at a definitive position on the issue that inflicts an actual concrete injury . . . ." *Id*. (emphasis added).  The policy requiring finality, as opposed to exhaustion, is that resolution of the extent of the injury "depends in significant part, upon an analysis of the effect" of the contested government activity allegedly causing plaintiff harm.  *Id*. at 200.  "That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property."  *Id*.

In the instant litigation, Appellants take the position that until the intermediate state court of appeals, the Commonwealth Court, determined that RACM unlawfully delegated eminent domain powers to Pulver, no final decision had been made under *Williamson*.  We disagree.  Under *Williamson*, only the decision of the "initial decisionmaker" must be final.  *Id*. at 192.  On these facts, the initial decisionmaker is RACM.[6]  Its decision became final for § 1983 purposes once Appellants had notice of the filing of the Declaration of Taking in 1996.[7]  Or, at the very latest, with the close of

---

[6] The initial decisionmaker was RACM, or, perhaps, it was RACM in conjunction with Pulver and Pulver controlled entities, which together decided to file the Declaration of Taking.

[7] We assume that no administrative review by state agencies of the Declaration of Taking was possible.  *See* 26 P.S. §§ 1-402, 1-407; *cf. Acierno v. Mitchell*, 6 F.3d 970

9

discovery in state court trial proceedings, by which time Appellants, exercising due diligence, should have been aware of all the relevant *facts*[8] supporting their § 1983 claim. *Cf. Lake v. Arnold*, 232 F.3d 360, 367 (3d Cir. 2000) (noting that "Pennsylvania common law ... recognizes the discovery rule, which tolls the statute of limitations until a plaintiff actually discovers the harm caused by an earlier inflicted but latent injury"); *Corn v. City of Lauderdale Lakes*, 904 F.3d 585 (11th Cir. 1990) (noting that "a federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action"). The state trial court issued its opinion on December 17, 1998. Therefore, by 1998 Appellants had notice of the final administrative action causing Appellants' injury. Thus this 2002 action was brought well beyond the two-year statute of limitations. We note that in *Williamson*, the Supreme Court referred to "judicial procedures" in its discussion of exhaustion, not finality. *Williamson*, 473 U.S. at 193. We know of no Third Circuit authority holding that state courts are adjuncts of administrative agencies for finality or ripeness purposes. We have expressly held otherwise. *See Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1293 n.12

---

(3d Cir. 1993) ("There has been no action by any authoritative body to reverse these actions, and thus we assume without deciding, plaintiff has a property interest in his plans" under state law). If such review were possible, then again this § 1983 action would not be ripe for review even now. And in those circumstances, we could not reach the merits of the dispute.

[8] We note that at no point do Appellants even allege that they first discovered subsequent to the 1998 state trial court decision any *fact* necessary to put them on notice that this § 1983 litigation accrued, much less why such a fact could not have been discovered with the exercise of due diligence prior to 1998.

10

(3d Cir. 1993) ("Of course, an aggrieved party may appeal for judicial review. A claim is 'final,' however, after the ... board has rendered a decision. Finality does not require state court review of the board's decision."); *id*. at 1292 (holding that *Williamson*'s finality requirement applies to § 1983 alleging violations of equal protection, procedural due process, and substantive due process); *see also Lauderbaugh v. Hopewell Twp*., 319 F.3d 568, 575 (3d Cir. 2003) ("The ripeness doctrine prevents judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.").

Appellants point to persuasive authority from another circuit holding that the "status of [plaintiff's] property was not determined [for finality purposes] until the state appellate court" reached its decision. *Corn*, 904 F.2d at 588. Since *Corn* was published, it has been heavily criticized by the circuit judge that wrote the opinion, by other Eleventh Circuit judges, and by judges within this circuit. *See New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1498 (11th Cir. 1993) (Edmondson, J., concurring) (criticizing *Corn*); *id*. at 1495 (Tjoflat, C.J., concurring) (criticizing *Corn*); *Sameric Corp. of Delaware v. City of Philadelphia*, No. Civ. A. 95-7057, 1996 WL 47973, at *3 & n.4 (E.D. Pa. 1996) (Kelly, J.) (rejecting *Corn*). We see no reason to embrace the much criticized view announced in *Corn*, and this panel is, in any event, bound by our prior precedents distinguishing agency determinations from state court review of final agency action.

11

As explained above, Plaintiff-Appellants took the position that the March Letter Agreement, executed less than two years prior to their filing the Complaint in this action, constituted a continuing violation, again tolling the statute of limitations. The District Court rejected this argument. The District Court held that the March Letter Agreement on its face only purported to oblige the parties to perform legal acts, or acts later determined to be legal by the Pennsylvania Supreme Court, should the latter overturn any part of the order issued by the Commonwealth Court. Thus, no continuing violation or affirmative acts of unlawful conduct were alleged in the two years prior to filing the Complaint. Additionally, the District Court held:

> [T]he continuing violation doctrine is a narrow and equitable exception. The doctrine "should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Cowell* [*v. Palmer Twp.*], 263 F.3d [286], at 295 [(3d Cir. 2001]. On the contrary, "if prior events should have alerted a reasonable person to act at that time the continuing violation theory will not overcome the relevant statute of limitations." *King v. Township of E. Lambert*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998).
>
> Dist. Ct. Op. at A-019.

Although the Appellants put forward a substantial response to the District Court's first rationale, the *only* argument put forward by way of response to the District Court's

12

second rationale is that "the substantive due process claim was not ripe until Plaintiffs' completed their appeal to the Commonwealth Court and the Commonwealth Court determined the status of the Florig property, in February 2001. Plaintiffs diligently brought their federal claims within two years of the Commonwealth Court's decision." Appellants' Br. at 54; Appellants' Reply at 9. We have already rejected this argument as to finality and ripeness. It can hardly resuscitate their claim under the aegis of the continuing violations doctrine.

Also troubling for Appellants' continuing violations argument in support of their substantive due process claim is their general litigation position that Appellees' conduct shocks the conscience, a necessary element to their due process claim. Although this question was not reached by the District Court, it was briefed before us on appeal. We note that neither the Court of Common Pleas, nor the Commonwealth Court (nor the dissent) made any express finding of bad faith against Appellees, although this matter was briefed in state court proceedings. *See* Joint Appx. at A-624 (holding by state trial court that Plaintiff failed to establish bad faith); *id*. at A-822 to A-833 (state appellate court did not reach bad faith issue); *id*. at A-835 to A-841 (dissenters on appeal taking the position that the state trial court correctly found no bad faith). It seems clear that "bad faith" is much like the "improper motive" test that this court applied in *Bello* and its progeny. That standard was later rejected in favor of the much more burdensome "shocks the conscience" standard announced in *United Artists*. *See Bello v. Walker*, 840 F.2d 1124,

13

1129 (3d Cir.1988) (adopting improper motive test), *abrogated by United Artists Theatre*, 316 F.3d at 400-02 (adopting shocks the conscience standard). Again, it seems reasonable that if Appellants could not meet the lower threshold, then they cannot meet the higher standard.

## IV. Conclusion

For the reasons elaborated above, we will affirm the District Court's orders dismissing Appellants' substantive due process claim. Applications for fees are denied.