NYGAARD, Circuit Judge,
dissenting.
In its singular focus upon R.J. Florig’s procedural machinations, I believe the majority has erred. Three conclusions compel my dissent: 1.) R.J. Florig’s federal claims have been waived; 2.) the issues raised in the federal claims have been conclusively addressed by the state court; and 3.) the lack of a federal remedy moots the federal claims.
The Pennsylvania Eminent Domain Code “is intended ... to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor.... ” 26 P.S. § 1-303 (1996). In that vein, the Code states that “[a]ll preliminary objections shall be raised at one time and in one pleading.” 26 P.S. § 1-406(e) (1996). Moreover, “[failure to raise these matters by preliminary objections shall constitute a waiver thereof.” 26 P.S. § 1-106(a) (1996). The Commonwealth Court said that “preliminary objections are intended as a procedure to resolve expeditiously the factual and legal *434 challenges to a declaration of taking before the parties proceed to determine damages.” In re Condemnation by City of Coatesville, 898 A.2d 1186, 1189 n. 7 (Pa.Cmwlth.2006). The problem, however, is that R.J. Florig never raised its federal claims. Rather, it stated in a footnote to its preliminary objections:
R.J. Florig Company is not presenting in this case its federal constitutional and civil rights claims, including the claims that the actions of the Authority and others constitute a taking of private property for purported public use without just compensation and a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments of the Unites States Constitution. R.J. Florig Company reserves its right to litigate these federal claims in federal court.
Preliminary Objections, p. 2 n. 1. While R.J. Florig declared that it was “not presenting” its claims, the Code does not authorize parties to make such a choice. They are limited by the law. See § 1-406(c). By the terms of the Code, R.J. Florig’s failure to raise these claims in its preliminary objections must be regarded as a waiver of those claims. Accordingly, R.J. Florig’s abandoned federal claims should not have been considered by the District Court.
Moreover, as the District Court determined, the issues raised in R.J. Florig’s federal complaint have been conclusively ruled upon in state court. We already affirmed — in an earlier decision — the District Court’s denial of R.J. Florig’s section 1983 claim as time-barred. In its federal complaint, R.J. Florig premises its remaining federal takings claim by characterizing the Commonwealth Court’s holding in its inverse condemnation action as follows:
Plaintiffs pursued just compensation for taking of their property rights in state court under Pennsylvania law but Pennsylvania appellate courts conclusively determined that Pennsylvania does not provide a remedy for taking of Plaintiffs’ property rights during the unlawful de jure condemnation of their property, regardless of the extent of the taking.
Complaint, ¶ 107 (emphasis added). This statement misconstrues the Commonwealth Court’s ruling. The Commonwealth Court determined the following:
In this case, R & J Holding already received costs and expenses under Section 408 of the Eminent Domain Code. Thus, they are not entitled to any more costs and expenses under any other Section of the Eminent Domain Code because the Code does not require that a condemnee be made whole. Moreover, R & J Holding is seeking damages under 502(e) which only applies when “no declaration of taking therefor has been filed”. To apply this Section to this case, this Court would have to insert the word “valid” before “declaration of taking.” Because a declaration of taking was filed in this case, damages under Section 502(e) are not available to R & J Holding.
R & J Holding Company v. The Redevelopment Authority of the County of Montgomery, 885 A.2d 643, 650 (Pa.Cmwlth.2005) (internal citations omitted). The Commonwealth Court ruled that, because this case originated in a declaration of taking, it is a de jure condemnation. R.J. Florig’s successful defense against the declaration under the Code’s de jure provisions enabled it to regain title to its property and receive attorney’s fees and costs in the amount of $550,959.73. The Commonwealth Court determined that, having received these remedies, R.J. Florig was not permitted to simply re-label the very same taking as an inverse de facto con *435 demnation and go back to court seeking another remedy.
Therefore, the Commonwealth Court did not rule that R.J. Florig was without a remedy. To the contrary, it ruled that the 1996 taking of R.J. Florig’s property was conclusively litigated and fully remedied in accordance with the Pennsylvania Eminent Domain Code, and as a result it could not be re-litigated. R. J. Florig wishes to read the decision as pointing to a gap in the scheme of just compensation permitted under the Code when, in fact, the decision closed the door to them. Its federal Fifth Amendment taking claim is, in every respect, the de facto condemnation claim raised and dismissed in state court. Res judicata requires that we respect the state court’s ruling by affirming the District Court’s dismissal of the claim. Therefore, even were we to assume that the federal claims were properly severed from the state claim, res judicata precludes our jurisdiction to consider them again.
Finally, even were we to ignore the relevance of waiver and res judicata to this case, the majority’s remand is perplexing because there is simply no remedy available at law. In R. J. Florig’s complaint for its federal taking claim, it seeks just compensation for, inter alia, their inability to “redevelop, sell, or lease the Florig Property ... [for their inability to] expand and/or relocate the steel processing business for a period of more than five years ... [and for] causing plaintiffs to spend thousands of hours in dealing with the imminent threat of condemnation.” Complaint, p. 27. The problem is that such damages are not prescribed by the concept of just compensation under the United States Constitution. In fact, the Pennsylvania Eminent Domain Code, under which this case was litigated, provided R.J. Flo-rig with a wider range of relief than is available under federal law.
I agree with the majority that an actual — rather than a de facto — taking occurred here because title to the property transferred at the declaration of taking. There can be no other conclusion. This, however, has consequences for the parameters of the constitutional right to just compensation. As the Supreme Court said:
This Court has often faced the problem of defining just compensation. One principle from which it has not deviated is that just compensation “is for the property, and not to the owner.” As a result, indirect costs to the property owner caused by the taking of his land are generally not part of the just compensation to which he is constitutionally entitled.
United States v. Bodcaw, 440 U.S. 202, 203, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979) (internal citation omitted). In its analysis, the Bodcaw Court spoke of a particular federal statute that, under certain circumstances, authorized attorney’s fees and litigation expenses where — as was the case here — “a condemnation action is dismissed as being unauthorized.... ” It concluded, however, that “such compensation is a matter of legislative grace rather than constitutional command,” and it denied relief presumably because no such statute applied in that case. Id. at 204, 99 S.Ct. 1066. In the same way, R.J. Florig does not cite to, nor can I find any federal statute that would authorize any remedy beyond that which it has already received under the Pennsylvania Eminent Domain Code. Re-titling this de jure action as a de facto condemnation does not change this fact.
Alternatively, construing the condemnation as a regulatory taking does not change the analysis. In circumstances that were analogous to this case, the Supreme Court said the following with regard to a constitutional right to just compensation.
*436 Even if the appellants’ ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are “incidents of ownership....”
Agins v. City of Tiburon, 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (overruled on other grounds in Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)) (quoting Danforth v. United States, 308 U.S. 271, 285, 60 S.Ct. 231, 84 L.Ed. 240 (1939)). R.J. Florig was never denied the ability to operate its business, eventually regained title to the property, and ultimately sold it at market value. I see no basis for distinguishing R.J. Florig’s multiple claims for damages from “incidents of ownership.” As a result, even were we to analogize this case to a regulatory taking, no relief is warranted.
In Williamson, the Supreme Court said: “[B]ecause the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied.” Williamson County Regional Planning Com’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Here, even if waiver and the doctrine of res judicata are ignored, R.J. Flo-rig has not demonstrated any basis to claim that, by resorting to the remedies available under the Pennsylvania Eminent Domain Code, they have been unjustly compensated. As a result, their claim is moot.
For all of these reasons, I dissent.