**R & J HOLDING COMPANY and RJ Florig Industrial Company, Inc.**

v.

**The REDEVELOPMENT AUTHORITY OF the COUNTY OF MONTGOMERY, Appellant**

**R & J Holding Company and RJ Florig Industrial Company, Inc., Appellants**

v.

**The Redevelopment Authority of the County of Montgomery.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided Oct. 26, 2005.

---

Gilbert P. High, Jr., Norristown, for designated appellant, Redevelopment Authority of the County of Montgomery.

Richard L. Bazelon, Philadelphia, for appellees, R & J Holding Company and RJ Florig Industrial Company, Inc.

Joel P. Aaronson, Pittsburgh, for amicus curiae, Pennsylvania Association of Housing and Redevelopment Agencies.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Redevelopment Authority of the County of Montgomery (Authority) appeals from the order of the Court of Common Pleas of Montgomery County (trial court) that denied its Preliminary Objections and ordered the parties to apply for the appointment of a Board of Viewers to assess damage caused to R & J Holding's property. The trial court also denied the preliminary objections of R & J Holding Company and RJ Florig Industrial Company, Inc. (R & J Holding), who has also filed a cross-appeal.

On January 1, 1986, the Authority entered into an agreement (1986 Agreement) with the Greater Conshohocken Improvement Corporation (GCIC), whose principal is Donald Pulver (Pulver), which provided for a process intended to lead to the adoption of a redevelopment proposal in the Boroughs of Conshohocken and West Conshohocken to eliminate blight. Under the 1986 Agreement, the Authority was to acquire properties in a specified project area in the boroughs by eminent domain, and to convey them to Pulver for development. Specifically, under the Agreement, the Authority was to acquire real property by Eminent Domain for the public purposes of the Urban Redevelopment Law (URL).[1]

On October 13, 1993, the Authority again entered into an agreement (1993 Agreement) with GCIC which specifically related to R & J Holding's property. Under the 1993 Agreement, the Authority agreed to commence legal acquisition proceedings against R & J Holding's property and to take whatever steps are necessary to acquire, pursuant to the Eminent Domain Code (Code),[2] title to the fee and possession of R & J Holding's premises.

Pursuant to the 1993 Agreement, the Authority was to fund the acquisition of R & J Holding's property by using the funds provided by a grant from the Commonwealth. Under the 1993 Agreement, GCIC was to cover all direct condemnation costs that exceeded the grant amount. Finally, pursuant to the 1993 Agreement, it was agreed that neither the Borough nor the Authority are authorized to file a Declaration of Taking of R & J Holding's property without the prior written consent of GCIC.

On March 15, 1995, the Authority offered to purchase R & J Holding's property for $1,180,000 plus reasonable relocation costs. On July 11, 1996, the Authority filed a Declaration of Taking for R & J Holding's property. On August 26, 1996, R & J Holding filed preliminary objections to the Declaration of Taking. On June 4, 1997, Condemnee filed amended preliminary objections to the Declaration of Taking. The preliminary objections alleged that the Declaration of Taking should be set aside because: (1) Condemnor had unlawfully delegated its eminent domain powers to Pulver; (2) Condemnor had acted in bad faith in condemning the subject property; and (3) inadequate security had been posted for the condemnation.

On December 17, 1998, the trial court issued an order disposing of R & J Holding's preliminary objections. The trial court overruled R & J Holding's preliminary objections relating to unlawful delegation and bad faith. Condemnee then filed an appeal in this Court.

In an *en banc* decision dated February 13, 2001, we reversed the decision of the trial court. *See In re Condemnation of 110 Washington Street, Borough of Conshohocken, Pennsylvania, by the Redevel-*

1. Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. §§ 1701–1719.1.

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903.

*opment Authority of Montgomery County for Urban Renewal Purposes,* 767 A.2d 1154 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 567 Pa. 748, 788 A.2d 379 (2001). Specifically, we ·stated that:

> It is clear that the actions of [the Authority] in this case were beyond those conferred by the URL. It is true that [the Authority] ultimately filed the Declaration of Taking for [R & J Holding's] property. However, under the Agreements, [the Authority] was purportedly not authorized to take this action without Pulver's prior written consent. Thus, Pulver directed the condemnation of [R & J Holding's] property; [The Authority] was merely acting on Pulver's behalf. Such an exercise of eminent domain is clearly beyond the provisions of the URL, and is patently without authority of law. Moreover, any agreement which purportedly transfers such power to a private individual must be deemed to be void and unenforceable.

*Id.* at 1160. Accordingly, we reversed the order of the trial court.

On December 31, 2002, R & J Holding filed a Complaint against the Authority in Federal Court. The Authority filed a Motion to Dismiss, which the United States District Court for the Eastern District of Pennsylvania granted in an unreported memorandum decision dated October 15, 2003. The Court reasoned that R & J Holding's claims were not ripe because Pennsylvania's state courts can resolve whether there has been a taking and, if so, what remedies are available to them. *See R & J Holding Co. v. Redevelopment Authority of the County of Montgomery,* 2003 WL 22387034 (No. 02–CV–09530–LDD, filed October 15, 2003).[3]

On March 1, 2004, R & J Holding filed a Petition For Appointment of Board of Viewers, selected paragraphs of which are set forth below:

54. From the time [the Authority] filed the Declaration of Taking on July 11, 1996, and until the end of the condemnation proceedings in July of 2001, [the Authority] had title to the Florig Property. *See* 26 P.S. § 1–405(a).

55. During the pendency of the proceedings in the Court of Common Pleas in the Condemnation Action, and through the time that the Petition for Leave to Appeal was filed, the value of real estate in the Conshohocken area was rapidly rising. However, the Florig Property remained unmarketable during that time because of the pending condemnation proceedings.

56. After the Commonwealth Court's order dated February 13, 2001, and before [the Authority] filed its Petition for Allowance of Appeal in the Supreme Court, it appeared that the title to the Florig Property might finally revert back to its lawful owners. During that time, redevelopers were interested in discussing with R & J Holding Company the purchase and redevelopment of the Florig Property. This was known to [the Authority] and Pulver.

57. During that time, at least one major developer was ready to purchase Florig Property for significantly more than Petitioners could have received from [the Authority], and was willing to assist Petitioners with relocating their business. *See* Letter from J. Brian O'Neill of the O'Neill Properties Group, LP to Gerald McTamney, President of Conshohocken Borough Counsel, dated March 7, 2001, attached hereto as Ex-

---

3. R & J Holding also filed a motion for clarification and reconsideration, which the Court denied in an unreported memorandum order dated February 11, 2004.

hibit "G." The interest in the Florig Property, predictably, disappeared when [the Authority] filed its Petition for Allowance of Appeal which continued the Condemnation Action.

58. At the time the Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal in July of 2001, the Condemnation Action had been pending for more than five years. Because of the condemnation proceedings during this five year period, and because of the imminent threat of condemnation for a number of years prior thereto, R & J Holding Company had been unable to sell or redevelop commercially the Florig property, and R J Florig Industrial Company had been unable to expand its steel processing business at the Florig property or to relocate its business.

59. At all times, R & J Holding Company and RJ Florig Industrial Company have been committed to the continuation and growth of the steel processing business owned by R J Florig Industrial Company, whether at the Florig Property or at an alternative relocation site. The said steel processing business had outgrown the plant and facilities at the Florig Property before the date of condemnation and R J Florig Company had developed plans for renovating, expanding and upgrading its facilities at this property in 1992. However, because of the threat of condemnation, and the condemnation itself, Petitioners could not proceed with these plans.

. . .

63. As a result of being placed in a state of economic limbo by the threat of condemnation, and then by the unlawful condemnation itself, R J Florig Industrial Company was constricted by inadequate plant and facilities for many years.

. . .

74. Petitioners are entitled to be compensation under the Eminent Domain Code for their injury in being unlawfully deprived of basic property rights for more than five years. *See* 26 P.S. § 1–502(e).

Therefore, R & J Holding requested that the trial court appoint viewers to assess the compensation due to it resulting from the taking of its property by the Authority. On March 9, 2004, the trial court appointed a Board of Viewers to assess the damage caused in connection with the matters alleged in the Petition for Appointment of Board of Viewers. On April 16, 2004, the Authority filed Preliminary Objections to the appointment of viewers, selected paragraphs of which are set forth below:

11. Subsequent to the conclusion of the initial litigation, on April 1, 2002 R & J Holding filed a Petition for Interim Fees, Costs and Expenses pursuant to 26 P.S. § 1–408 . . . On June 30, 2003, the trial court held in favor of R & J Holding and awarded $550,959.73 for the fees, costs and expenses claimed in the Fee Petition. That award was subsequently satisfied by the Redevelopment Authority's payment.

. . .

14. Plaintiffs are not entitled to the damages they seek, as such damages are not available in a condemnation action. Damages related to a condemnation are limited by § 1–408 to reimbursement for "reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings." Other damages, such as lost rental income, diminution of market value, delay compensation, and loss or other injury are not available because these damages are not specified by statute.

. . .

18. Plaintiff, Florig, was never substantially deprived of the use and enjoyment of the property.

. . .

20. Where Plaintiffs allege that title transferred to the Redevelopment Authority by reason of the filing of a declaration of taking, they cannot also claim damages allowed only where no transfer of title has taken place, since 26 P.S. § 1–502(e) provides for damages only where "there was been a compensable injury suffered and no declaration of taking has been filed."

R & J Holding filed an Answer to the Authority's Preliminary Objections. In addition, R & J Holding filed Preliminary Objections to the Authority's Preliminary Objections, wherein it argued that the Authority's preliminary objections are barred by equitable and promissory estoppel because they successfully argued in federal court that R & J Holding must seek compensation in state court under the Eminent Domain Code and that relief was available to them under state law for the unlawful taking. As such, R & J Holding argued that the Authority's position in its preliminary objections is inconsistent with the position it took in federal court.

By order dated January 12, 2005, the trial court overruled all preliminary objections and ordered the parties to make an application for the appointment of a Board of Viewers. The Authority appealed to this Court and R & J Holding also filed a cross-appeal.[4] On April 11, 2005, the trial court filed an opinion in support of its order. The trial court stated, in part, that:

[The Authority's] position in the present case appears to be contrary to their position in Federal Court. In Federal Court, [the Authority] argued that R & J Holding had a remedy under § 1–502(e), which is the section of the Eminent Domain Code where claimants seek damages for a *de facto* taking. In this Court, they argued that R & J Holding is precluded from damages under § 1–502(e) because they filed a Fee Petition pursuant to 26 P.S. § 1–406 and § 1–408. However, it is this Court's position that the compensable taking that occurred in this case should allow R & J Holding to recover.

This Court determined that the compensable taking that occurred in this case was similar to a *de facto* taking and construed the Eminent Domain Code to find a remedy for R & J Holding. While it is true that there cannot be a *de facto* taking when a declaration of taking is filed, no valid declaration of taking was ever filed in this case, and this Court finds that the compensable taking that occurred was similar to a *de facto* taking.

(Trial Court's 4/11/2004 Opinion, pp. 8–9).

On appeal, the Authority argues that: 1) the trial court erred in determining that R & J Holding is entitled to damages other than those it received under Section 408 of the Eminent Domain Code for "reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings", 2) the trial court erred in determining that R & J Holding was entitled to damages as though a *de facto* taking had occurred and 3) the trial court erred by failing to hold a hearing for the purpose of determining whether a *de facto* hearing had occurred.

---

4. Our scope of review in an eminent domain matter is limited to determining whether the trial court abused its discretion, committed an error of law or whether the findings of the trial court are supported by sufficient evidence. *Captline v. County of Allegheny*, 727 A.2d 169, 172 (Pa.Cmwlth.1999).

In its cross-appeal, R & J Holding argues that the Authority is estopped from arguing that R & J Holding is not entitled to damages under Section 502(e) because of the representations they made in Federal Court in their effort to get the case dismissed. We disagree. In Federal Court, the Authority only generally argued that any remedy R & J Holding could possibly have is under the Eminent Domain Code, not that they necessarily would be successful in gaining any remedy under the Code. Therefore, we reject R & J Holding's argument. Accordingly, we affirm that part of the trial court's order denying R & J Holding's preliminary objections to the Authority's preliminary objections.

Initially, it is important to note that "[a] de jure condemnation is one initiated by the condemning body in compliance with all statutory requirements, whereas a de facto condemnation occurs outside the legal process when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his or her property. *See Conroy–Prugh Glass Co. v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974). This distinction is important because it determines which provision of the Code governs a condemnee's entitlement to fee reimbursement." *Captline v. County of Allegheny,* 727 A.2d 169, 172 n. 7 (Pa.Cmwlth.1999).

In this case, R & J Holding petitioned the trial court for the appointment of a board of viewers pursuant to Section 502(e) of the Eminent Domain Code, which provides that:

(e) If there has been a compensable injury suffered and *no declaration of taking therefor has been filed,* a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

26 P.S. § 1–502(e) (emphasis added). Here, there *was* a declaration of taking filed. However, R & J Holding argued that because that taking was declared unlawful by this Court, the taking that occurred is similar to a *de facto* taking and thus, Section 502(e) applies to this case. The Authority argues that because a declaration of taking was filed, R & J Holding's damages are limited by the damages they already received pursuant to Section 408 of the Eminent Domain Code. Section 406(e) provides, in relevant part:

(e) The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. *If preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if the condemnation had been revoked under section 408,* to be assessed as therein provided. If an issue of fact is raised, the court shall take evidence by depositions or otherwise. The court may allow amendment or direct the filing of a more specific declaration of taking.

26 P.S. § 1–406(e) (emphasis added). Section 408 provides, in relevant part, that:

The condemnor, by filing a declaration of relinquishment ... may relinquish all or any part of the property condemned that it has not taken actual possession of for use in the improvement, whereupon title shall revest in the condemnee as of the date of the filing of the declaration of taking ... *Where condemned property is relinquished, the condemnee shall be reimbursed by the condemnor for reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings.* Such damages shall be assessed by the court, or

the court may refer the matter to viewers to ascertain and assess the damages sustained by the condemnee, whose award shall be subject to appeal as provided in this act. The condemnor and the condemnee, without the filing of a declaration of relinquishment as provided herein, may by agreement effect a revesting of title in the condemnee, which agreement shall be properly recorded.

26 P.S. § 1–408 (emphasis added).

In the case of *In re Condemnation by Department of Transportation,* 709 A.2d 939 (Pa.Cmwlth.1998), DOT filed a declaration of taking for one-half of the land and an entire building owned by condemnees for the construction of the North Shore Expressway. The condemnees filed preliminary objections arguing that the taking was excessive, and the trial court agreed. The condemnees then pursued their compensation claim. The trial court determined that the principle of Section 408 required full compensation and just compensation mandated that the condemnees be made whole. On appeal, DOT argued that the trial court erred. We agreed and stated that:

> Condemnees were entitled only to those costs and expenses actually incurred by them due to the Department's condemnation. They were not entitled to an award for speculative damages, loss or injury or for any other category of damages not expressly provided by statute. *Commonwealth, Department of Transportation v. Epley Land Co.,* 16 Pa. Cmwlth. 508, 328 A.2d 913 (1974).

. . .

It is evident from the Court's review that the trial court misconstrued Section 408 of the Eminent Domain Code when it determined that all damages sustained by Condemnees were recoverable, and it also erred in determining Condemnees' claims under just compensation require-

ments. The trial court awarded sums for loss rentals and for interest on the various claims allowed; these items, however, do not fall within the categories permitted by Section 408, and, as a result, they are not recoverable in a Section 408 action.

*Id.* at 944. In *Gross v. City of Pittsburgh,* 741 A.2d 234 (Pa.Cmwlth.1999), this Court, citing *In re: Condemnation by DOT,* reiterated the kinds of costs and expenses recoverable under Section 408:

> Section 408 allows condemnees to recover costs and expenses incurred by them "because of the condemnation proceedings." 26 P.S. § 1–408. Courts are *not* to award such costs and expenses based on just compensation requirements. *In re: Condemnation by the Commonwealth, Department of Transportation.* "[R]eimbursable costs or expenses are allowed by statute only and ⋯ are not included or embraced within just compensation for land taken for eminent domain purposes." *Id.* at 943. Thus, section 408 of the Eminent Domain Code does *not* require that a condemnee be made whole. *Id.*

*Id.* at 241 (footnote omitted).

In this case, R & J Holding already received costs and expenses under Section 408 of the Eminent Domain Code. Thus, they are not entitled to any more costs and expenses under any other Section of the Eminent Domain Code because the Code does not require that a condemnee be made whole. *In re: Condemnation by DOT, Gross.* Moreover, R & J Holding is seeking damages under Section 502(e), which only applies when *"no declaration of taking therefor has been filed"*. To apply this Section to this case, this Court would have to insert the word "valid" before "declaration of taking." Because a declaration of taking was filed in this case, damages under Section 502(e) are not available to R & J Holding.

Accordingly, the order of the trial court denying the Authority's preliminary objections to R & J Holding's Petition For Appointment of Board of Viewers and ordering the parties to make an application for the appointment of a Board of Viewers is reversed.[5]

### ORDER

AND NOW, October 26, 2005, the order of the trial court denying the Authority's preliminary objections to R & J Holding's Petition For Appointment of Board of Viewers and ordering the parties to make an application for the appointment of a Board of Viewers is hereby REVERSED. In addition, that part of the trial court's order denying R & J Holding's preliminary objections to the Authority's preliminary objections is hereby AFFIRMED.

---

5. Having reached this conclusion, we do not need to address the Authority's remaining arguments.