**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1047
_____

R&J HOLDING COMPANY;
RJ FLORIG INDUSTRIAL COMPANY, INC.,

Appellants

v.

THE REDEVELOPMENT AUTHORITY OF THE
COUNTY OF MONTGOMERY;
DONALD W. PULVER;
GREATER CONSHOHOCKEN IMPROVEMENT
CORP.;
TBFA PARTNERS, L.P.,

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-06-cv-01671

1

District Judge: The Honorable C. Darnell Jones, II

Argued September 15, 2011

Before: SLOVITER, SMITH, and NYGAARD, *Circuit Judges*

(Filed: December 9, 2011)

Richard L. Bazelon (Argued)
Michael A. Shapiro
Bazelon, Less & Feldman
1515 Market Street
Suite 700
Philadelphia, PA 19102
        *Counsel for Appellant*

Charles L. Becker
Kline & Specter
1525 Locust Street
19th Floor
Philadelphia, PA 19102

Maria T. Guerin
John F. Smith, III (Argued)
Reed Smith
1650 Market Street
2500 One Liberty Place

Philadelphia, PA  19103
  *Counsel for Appellee The Redevelopment*
  *Authority of Montgomery County*

H. Robert Fiebach  (Argued)
Jennifer M. McHugh
Cozen O'Connor
1900 Market Street
3rd Floor
Philadelphia, PA  19103

Ronald J. Offenkrantz
Lichter, Gliedman & Offenkrantz
551 Fifth Avenue
24th Floor
New York, NY  10176
  *Counsel for Appellees Donald W. Pulver and*
  *Greater Conshohocken Improvement Corp.*

Barbara W. Mather (Argued)
Pepper Hamilton
18th & Arch Street
3000 Two Logan Square
Philadelphia, PA  19103
  *Counsel for Appellee TBFA Partners, L.P.*

_____

## OPINION

_____

SMITH, *Circuit Judge.*

This is the latest action in a long series of disputes that followed the attempted condemnation of commercial property in Conshohocken, Pennsylvania. Seeking to revitalize the Conshohocken waterfront, the Redevelopment Authority of Montgomery County (the "Authority") – at the behest of developer Donald Pulver – attempted to condemn Plaintiffs' property, which was home to a successful steel processing business. The Plaintiffs fought the condemnation in state court. Plaintiffs prevailed, and were awarded their attorneys' fees and expenses.

But because the Authority held title to Plaintiffs' property throughout the state court action, Plaintiffs filed a claim in federal court, seeking the "just compensation" promised by the Fifth Amendment. The District Court rejected Plaintiffs' claim, essentially because they had never asked the Redevelopment Authority whether it would simply give them "just compensation." Turning again to the state courts, Plaintiffs did so, and were rebuffed because the Pennsylvania Eminent Domain Code does not provide for "just compensation" in these situations. Thus denied, Plaintiffs returned to federal

4

court, still seeking their "just compensation." The District Court dismissed their case, holding that Plaintiffs should have brought their federal claims as part of their second action in state court.

We will reverse.

# I

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) over Plaintiffs' federal claims under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. The District Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' state claims forming part of the same case or controversy. The District Court's December 2, 2009 Order was a final decision disposing of all of Plaintiffs' claims. Plaintiffs timely filed their Notice of Appeal on December 28, 2009. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a District Court order dismissing a complaint. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). On a motion to dismiss, "we must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"

5

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

**II**

At all times relevant to this lawsuit, Plaintiff R&J Holding Company (the "owner") owned the parcel of land located at 110 Washington Street, Conshohocken, Pennsylvania. Plaintiff RJ Florig Industrial Company was R&J Holding's lessee and operated a steel processing business on the land. The Defendant Redevelopment Authority of Montgomery County is a government agency with the power of eminent domain. Defendant Donald Pulver, a land developer, is the principal of Defendants Greater Conshohocken Improvement Corporation and TBFA Partners, L.P. For ease of reference, we will refer to the three as "the Pulver Defendants."

In 1986, the Authority and the Pulver Defendants conceived a plan to redevelop certain land, including the subject property, situated in Montgomery County, Pennsylvania. They entered into a series of agreements, under which the Authority was to condemn as blighted the Plaintiffs' real property and convey it to the Pulver Defendants. Importantly, the agreements provided that the Authority could initiate condemnation proceedings

6

against the property only when directed to do so by Pulver.

On July 11, 1996, at Pulver's direction, the Authority filed a Declaration of Taking for the subject property. This had the effect of transferring title to the property to the Authority. *See* 26 Pa. Cons. Stat. Ann. § 1-402(a) (1997).[1] The owner opposed the taking, arguing that it was unlawful because – by giving the Pulver Defendants the power to determine whether and when to initiate condemnation proceedings – the Authority had improperly delegated its eminent domain powers. The Common Pleas Court approved the taking over the owner's objection, and the owner appealed this ruling to the Pennsylvania Commonwealth Court.

The Commonwealth Court reversed in an opinion dated February 13, 2001. It agreed with the owner that the Authority had given the Pulver Defendants the power to determine whether and when to condemn the subject property. It held that such a delegation of eminent domain power was unlawful, as eminent domain is

---

[1] Section 1-402 is part of Pennsylvania's Eminent Domain Code, 26 Pa. Cons. Stat. Ann. § 1-401 *et seq.* The Code was repealed and replaced in 2006, but the provisions of the pre-2006 Code are at issue in this case. *See In re De Facto Condemnation and Taking of Lands*, 972 A.2d 576, 580 n.2 (Pa. Commw. Ct. 2009).

inherently a sovereign power and cannot be exercised by a private party. The court therefore invalidated the taking and remanded the case to the Court of Common Pleas. *In re Condemnation of 110 Washington Street*, 767 A.2d 1154, 1160-61 (Pa. Commw. Ct. 2001).

On remand, the owner petitioned for fees and expenses under §§ 1-406 and 1-408 of the Eminent Domain Code. These sections provide that an owner who successfully resists a condemnation action (*i.e.*, a prevailing condemnee) is entitled to "reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceeding." Pa. Cons. Stat. Ann. § 1-408 (1997). The court awarded the owner $550,959.73. *See R&J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 885 A.2d 643, 647 (Pa. Commw. Ct. 2005).

In late 2002, Plaintiffs filed a § 1983 suit in federal court against the Authority and the Pulver Defendants. Their complaint asserted (among other claims) a Fifth Amendment takings claim seeking just compensation. Plaintiffs alleged – as they do here – that they were deprived of certain fundamental property rights, including the right to improve the property and the right to sell the property.

The Defendants moved to dismiss on ripeness grounds. Under *Williamson County Regional Planning*

8

*Commission v. Hamilton Bank*, 473 U.S. 172 (1985), if a state provides an adequate procedure for seeking just compensation, a Fifth Amendment takings claim is not ripe until the owner has availed itself of the procedure and been denied just compensation. *See id.* at 194. This is because the Fifth Amendment does not prohibit the taking of property; it only prohibits the taking of property without just compensation. *See id.* at 194 & n.13; *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (noting that under *Williamson County*, a takings claim is not ripe until "the plaintiff has unsuccessfully exhausted the state's procedures for seeking 'just compensation,' so long as the procedures provided by the state were adequate").

The District Court determined that Pennsylvania's Eminent Domain Code allows an aggrieved property owner to seek just compensation in these circumstances by filing an inverse-condemnation action. *See R&J Holding Co. v. Redevelopment Auth. of the Cnty. of Montgomery*, No. 02-cv-9530, 2003 WL 22387034, at *4-6 (E.D. Pa. Oct. 15, 2003). Because the owner had not yet filed an inverse-condemnation action seeking just compensation, the District Court dismissed the takings

claim on ripeness grounds. *Id.* (citing *Williamson County*, 473 U.S. at 194-95).[2]

Plaintiffs then filed an inverse-condemnation action in the Montgomery County Court of Common Pleas. Asserting that they had suffered a taking during the unlawful condemnation proceeding, Plaintiffs argued that they were entitled to compensation under Pennsylvania's Eminent Domain Code. At the same time, Plaintiffs invoked *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), to reserve their federal claims for federal court. The Court of Common Pleas agreed with the Plaintiffs and ordered the parties to appear before a board of viewers to determine the amount of damages. The Authority appealed.

The Commonwealth Court reversed. It held that the Eminent Domain Code does not entitle a prevailing condemnee to compensatory damages. Rather, the Code

---

[2] The owner had also asserted a substantive due process claim for improper delegation of authority. The District Court dismissed that claim on statute-of-limitations grounds. The owner appealed the dismissal of that claim (but not the dismissal of its takings claim), and we affirmed in a non-precedential opinion. *See R&J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 165 F. App'x 175 (3d Cir. 2006).

10

limits a prevailing condemnee's recovery to the out-of-pocket expenses available under §§ 1-406 and 1-408. Because the owner had already recovered expenses under §§ 1-406 and 1-408, the court concluded that the Plaintiffs had received all the relief to which they were entitled under the Code. *See R&J Holding Co. v. Redevelopment Auth. of the Cnty. of Montgomery*, 885 A.2d 643, 649-50 (Pa. Commw. Ct. 2005). Plaintiffs' brief before the Commonwealth Court repeatedly invoked their rights under the Pennsylvania Constitution, but never directly mentioned their rights under the United States Constitution. The Commonwealth Court's opinion never explicitly addressed whether denying just compensation violated the state or federal constitutions.

The owner asked the Pennsylvania Supreme Court to review the Commonwealth Court's decision, but it declined to do so.[3]

Having been denied relief, Plaintiffs returned to federal court and filed the current action. They asserted essentially the same Fifth Amendment takings claim that they had asserted in the first federal lawsuit, as well as assorted claims under state law. Defendants moved to

---

[3] Plaintiffs renewed their purported reservation of federal claims in their briefing before the Commonwealth Court and in their Petition for Allowance of Appeal to the Pennsylvania Supreme Court.

11

dismiss, arguing (among other things) that the takings claim was barred by the doctrine of claim preclusion. The District Court agreed, dismissed the claim, and declined to exercise supplemental jurisdiction over the state-law claims. *See R&J Holding Co. v. Redevelopment Auth. of Montgomery Cnty.*, No. 06-1671, 2009 WL 4362567 (E.D. Pa. Nov. 30, 2009).

This appeal followed.

## III

While the District Court addressed only Defendants' arguments regarding claim preclusion, Defendants assert numerous grounds for affirming the District Court, including claim preclusion, issue preclusion, failure to state a claim, and the statute of limitations. We address each in turn.

## III.A

Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of" the state from which they emerged. Section 1738 "has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" *San Remo Hotel v. City & Cnty. of S.F.*, 545 U.S. 323, 336 (2005). To determine the effect of a

12

Pennsylvania court judgment, we are required to apply Pennsylvania's claim- and issue-preclusion law.  *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982) ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

Claim preclusion, or *res judicata*, is a defense asserted when a case is essentially identical to one that has previously been adjudicated.  In many jurisdictions, claim preclusion extends not only to those claims actually asserted in a previous action, but also to all those claims which *could have been* asserted.  Pennsylvania's law of claim preclusion was summarized by the state supreme court in *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995):  "Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.  *Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action."  For claim preclusion to apply, Pennsylvania requires that the two actions share the following four conditions:  (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.  *See Bearoff v. Bearoff Bros.,*

13

*Inc.*, 327 A.2d 72, 74 (Pa. 1974). But we need not consider whether all of these elements are present. Because the Plaintiffs clearly stated their intention to split their state and federal claims during the second state action and the Defendants raised no objections, the Defendants have acquiesced to the Plaintiffs' claim splitting.[4]

---

[4] The Dissent argues that the Plaintiffs had already waived their federal rights when they failed to assert them as preliminary objections in the first state action. The Dissent is correct that failure to raise certain matters as a preliminary objection constitutes a waiver, but those matters are specifically enumerated by statute: "Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise *these* matters by preliminary objections shall constitute a waiver thereof." Pa. Cons. Stat. Ann. § 1-406 (1997) (emphasis added). In this action, Plaintiffs do not challenge the validity of the taking, the security supplied, or the procedure used. Rather, Plaintiffs challenge the sufficiency of their compensation. This is not an issue that must be raised by preliminary objections, so it cannot have been waived.

14

As we held in *Bradley v. Pittsburgh Board of Education*, 913 F.2d 1064 (3d Cir. 1990), Pennsylvania follows Section 26(1) of the Restatement (Second) of Judgments, which provides that claim preclusion shall not apply where:

> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim or the defendant has acquiesced therein; or

> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action.

*Id.* at 1072 (quoting Restatement (Second) of Judgments § 26(1)). We also held in *Bradley*, pursuant to the commentary in the Restatement, that "[t]he failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." *Id.* (quoting Restatement (Second) of Judgments § 26(1)(a) cmt. a (1982)). We further noted that the Restatement explicitly mentioned cases where "the opposing party may acquiesce in the federal claim being split off and reserved." *Id.* at 1073 (quoting Restatement (Second) of Judgments § 86, cmt. f).

In *Coleman v. Coleman*, 522 A.2d 1115, 1120 (Pa. Super. 1987) (en banc), the Pennsylvania Superior Court,

15

quoting Restatement Sections 26(1) (a) and (b), held that "[t]he law of Pennsylvania is in accord with the approach taken by the Restatement." *Id.* In a prior case, the Pennsylvania Supreme Court explained: "Though such splitting of actions is not favored it is not impermissible when the parties and the court agree on that method of adjudicating the action." *Keystone Bldg. Corp. v. Lincoln S&L Ass'n*, 360 A.2d 191, 196 n.10 (Pa. 1976).

Neither the briefs of the parties nor our own research has uncovered any Pennsylvania case which would call *Bradley*'s interpretation of Pennsylvania law into question. As such, *Bradley* controls the outcome here. On the very first page of their state complaint, Plaintiffs noted their intent to reserve their federal claims for adjudication in a federal forum. Plaintiffs reiterated their intent to reserve their federal claims in their filings before the Pennsylvania Commonwealth Court and the Pennsylvania Supreme Court. Defendants uttered not a word about the reserved federal claims while Plaintiffs prosecuted their state claims all the way to the Pennsylvania Supreme Court. They cannot now benefit from their silence.[5]

---

[5] The Pulver Defendants argue that such consent cannot bind them because they were not parties to the first action. But the defense of claim preclusion can be asserted only by parties that did participate in the first

16

Note that our decision relies solely on our interpretation of Pennsylvania claim preclusion law. Plaintiffs originally styled their reservation of federal claims as an *England* reservation. In *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), the Supreme Court held that "when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue, the plaintiff may reserve his right to return to federal court for the disposition of his federal claims." *San Remo*, 545 U.S. at 339 (discussing *England*). *England* was decided in the context of *Pullman* abstention, under which a federal court postpones exercise of its properly-invoked jurisdiction and directs the parties to state court because the outcome may be decided by an antecedent question of state law. *See R.R.*

---

action. *See Balent*, 669 A.2d at 313 ("Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit *between the parties or their privies* on the same cause of action." (emphasis added)). To the extent the Pulver Defendants are asserting that they are in privity with the Authority and therefore participated in the first action, they cannot have it both ways. Either they are in privity and are bound by the Authority's implied consent, or they are not in privity and lack standing to assert the defense of claim preclusion.

17

*Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

*England* reservations have been permitted outside the *Pullman* context, including in cases sent to state court to fulfill the ripeness requirements of *Williamson County*. *See, e.g.*, *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1306 (11th Cir. 1992). But the availability of an *England* reservation in the *Williamson County* context has been called into question by *San Remo Hotel v. City & County of San Francisco*, 545 U.S. 323 (2005), in which the Supreme Court held that plaintiffs could not rely on *England* to avoid the bar of issue preclusion in a takings case. *See id.* at 338. Yet we need not consider the continued viability of *England* in the *Williamson* context. Regardless of whether Plaintiffs' statement was valid as an *England* reservation, it provided notice to Defendants of Plaintiffs' intent to split their state and federal claims. And Plaintiffs reiterated their intent to reserve their federal claims in filings before the Pennsylvania Commonwealth Court and the Pennsylvania Supreme Court. Defendants' failure to object constitutes implied consent under Pennsylvania law. Thus, pursuant to 28 U.S.C. § 1738, we faithfully apply Pennsylvania law in concluding that Plaintiffs' claims are permitted.[6]

---

[6] Defendants suggest that *San Remo* undermines our holding in *Bradley*. But *Bradley* contained two entirely

18

## III.B

Defendants have raised several alternative bases for affirming the District Court's judgment, namely issue preclusion, failure to state a claim, and the statute of limitations. "We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance." *Forestal Guarini SA v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010). But given the vintage of this dispute, we think it appropriate, as a matter of judicial economy, to accelerate its resolution to the extent reasonably possible. These three issues are properly before us and have been fully briefed. We exercise our discretion to resolve them now.[7]

---

independent holdings: first, that an *England* reservation was available under the circumstances of that case, 913 F.2d at 1072; second, that the defendants had – as a matter of Pennsylvania state law – impliedly consented to Bradley splitting his state and federal claims, *id.* at 1072-73. Even if we assume (without deciding) that *Bradley*'s first holding is no longer good law, there is no reason to conclude that *Bradley*'s second holding was undermined in any way by *San Remo*.

[7] Defendants also object to plaintiffs' request for punitive damages and plaintiffs' suit against Mr. Pulver in his

19

Just as claim preclusion bars re-litigation of an entire case, issue preclusion bars re-litigation of discrete issues, even in a case based on an entirely different claim. The fundamental question is whether the issue has been *actually decided* by a court in a prior action. *See McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1147-48 (Pa. 1996) ("[W]hen an issue of fact or of law is actually litigated and determined by a valid final judgment, and determination of the issue was essential to judgment, the determination on that issue is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

The parties agree that the Plaintiffs avoided directly raising their federal claims before the Pennsylvania state courts. And in its opinion holding that the Eminent Domain Code did not provide for "just compensation" under the circumstances of this case, *R&J Holding Co. v. Redevelopment Auth. of the Cnty. of Montgomery*, 885 A.2d 643, 650 (Pa. Commw. Ct. 2005), the Pennsylvania Commonwealth Court never directly addressed whether such an interpretation was permitted under the United States Constitution.

Nonetheless, the Defendants assert that issue preclusion should apply. Defendants' argument runs as

individual capacity. We leave these and any remaining issues for initial consideration by the District Court.

20

follows:  The Plaintiffs *did* argue that an interpretation of the Eminent Domain Code denying just compensation could conflict with the Pennsylvania Constitution.  Since the Commonwealth Court had the constitutional argument before it, the court must necessarily have decided that its interpretation of the Eminent Domain Code was permissible under the Pennsylvania Constitution (even though the court never actually said so).  *See Grubb v. Pub. Utils. Comm'n of Ohio*, 281 U.S. 470, 477-78 (1930) ("The question of the constitutional validity of the order was distinctly presented by the appellant's petition and necessarily was resolved against him by the judgment affirming the order.  Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment . . . any less an adjudication of it."); *Balent*, 669 A.2d at 315 (Pa. 1995) ("[W]e must assume that the court properly considered the constitutional implications, before making its final determination that the taking was non-compensable.").  Finally, the Pennsylvania and United States constitutions have been interpreted co-extensively by Pennsylvania courts.  *See United Artists Theater Circuit, Inc. v. City of Phila.*, 635 A.2d 612, 616 (Pa. 1993) ("[T]his Court has continually turned to federal precedent for guidance in its 'taking' jurisprudence, and indeed has adopted the analysis used by the federal courts.").  Therefore, by determining the state constitutional issue, the Commonwealth Court determined the federal

constitutional issue.

We disagree. First, even assuming the Commonwealth Court's opinion inherently considered the federal constitutionality of its interpretation of the Eminent Domain Code, that has no bearing on whether there are alternative means for obtaining just compensation (such as a § 1983 suit). Second, this chain of logic stretches too far. The parties never actually litigated the federal constitutionality of the Pennsylvania Eminent Domain Code and the state courts never actually decided it. A past conclusion that the Takings Clause of the Pennsylvania Constitution and the Takings Clause of the United States Constitution are co-extensive does not constitute a present determination that an interpretation of state law accords with the United States Constitution, particularly when the federal constitutionality of that interpretation was never directly presented to the state court.

We hold that issue preclusion does not bar Plaintiffs' suit.

### III.C

Defendants also assert that Plaintiffs have failed to state a claim because this is not a taking. TBFA argues that without an accompanying attempt to take physical possession of the property, transfer of title to the

22

government does not constitute a taking. TBFA also argues that the Plaintiffs have abandoned any argument based on regulatory takings precedent. The Authority, Pulver, and GCIC argue that even if regulatory takings precedent is applied, this is not a taking. We conclude that this is a *per se* taking because title to the land actually passed from Plaintiffs to the Authority when the Authority filed a Declaration of Taking on July 11, 1996.

In *Yee v. Escondido*, 503 U.S. 519 (1992), the Supreme Court explained that "[w]here the government authorizes a physical occupation of property (*or actually takes title*), the Takings Clause generally requires compensation." *Id.* at 522 (emphasis added). In *United States v. Lynah*, 188 U.S. 445 (1903), as a first step towards determining whether there had been a taking, the Court noted: "Was there a taking? There was no proceeding in condemnation instituted by the government, no attempt in terms to take and appropriate the title." *Id.* at 468. This implies that had such an attempt occurred, the Court would have held there to be a taking.

Defendants dismiss *Yee* as a regulatory takings case. But while *Yee* was indeed a regulatory takings case, the Supreme Court had to formulate some way to *decide* whether it was a regulatory takings case. In both *Yee* and *Lynah*, the first question asked was "Did the government take title or possession of the land?" While

the Court answered in the negative in both cases, answering in the affirmative would have obviated any need for considering regulatory takings jurisprudence.

In addition, the nature of the Authority's action belies any argument that this was a regulatory taking. Had the Authority been successful in state court, it intended to take physical possession of the property. The lines of precedent for *per se* and regulatory takings are separate and distinct. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 323-24 (2002) (holding it "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa"). Because the Authority's acquisition of the property would have ended as a *per se* taking, it must have begun as a *per se* taking.[8]

---

[8] Supreme Court precedent does suggest that in some rare cases, regulatory takings may be considered the equivalent of *per se* takings. The Court has identified only two situations in which this would occur: first, where regulation compels physical invasion of an owner's property; second, where regulation deprives an owner of all economically beneficial use of their property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015-18 (1992). Neither situation is at issue here.

The only contrary authority cited by the Defendants is *Horne v. USDA*, No. CV-F-08-1549, 2009 U.S. Dist. LEXIS 115464 (E.D. Cal. Dec. 11, 2009). In that case, the District Court considered the constitutionality of a raisin marketing order under which a certain portion of the raisin crop was required to be transferred to the Raisin Administrative Committee as "reserve tonnage." The District Court concluded that "the transfer of title to the reserve tonnage does not constitute a physical taking." *Id.* at \*76. The Ninth Circuit, though affirming the judgment of the District Court, rested its analysis on a sounder analytical framework, concluding that "the Raisin Marketing Order applies to the Hornes only insofar as they voluntarily choose to send their raisins into the stream of interstate commerce." *Horne v. USDA*, No. 10-15270, 2011 U.S. App. LEXIS 15284, at \*23 (July 25, 2011). In other words, in order to participate in the world of raisin marketing, growers must surrender a portion of their crop as an entrance fee. But whether growers choose to sell in interstate commerce (and pay the fee) is entirely their prerogative. To the extent the District Court in *Horne* was stating a broader position, we cannot agree.

*Yee* and *Lynah* seem to indicate that a *per se* taking can be triggered by *either*: (1) a physical occupation of the owner's land *or* (2) a transfer of title. We agree. Practice involving federal government takings confirms

25

that transfer of title is a watershed moment.  When the federal government is involved in condemnation proceedings, it can file a Declaration of Taking and pay estimated just compensation.  If it does so, title passes immediately, and this set of events marks the "taking." *See United States v. Dow*, 357 U.S. 17, 22-23 (1958) (noting that the filing of a declaration and payment of just compensation works a transfer of title and that "[t]he scheme of the Taking Act makes it plain that when the Government files a declaration before it has entered into possession of the property the filing constitutes the 'taking'").  In addition, Federal Rule of Civil Procedure 71A(i)(1) prohibits judges from dismissing a condemnation proceeding "if the plaintiff has already taken title, a lesser interest, or possession as to any part of" the property.  Rather, the court "must award compensation for the  title, lesser interest, or possession taken."  *Id.*  Again, this implies that transfer of title constitutes a taking, for which just compensation must be paid.

The parties do not dispute that transfer of title occurred by operation of Pennsylvania's Eminent Domain Code.  *See* 26 Pa. Cons. Stat. Ann. § 1-402(a) (1997) (repealed 2006) ("[T]he title which the condemnor acquires in the property condemned [passes] to the condemnor on the date of [the filing in court of the declaration of taking.]").  As the Supreme Court has

26

explained, its "jurisprudence involving condemnations and physical takings is as old as the Republic and, for the most part, involves the straightforward application of *per se* rules." *Tahoe-Sierra*, 535 U.S. at 322. Because title was actually transferred to the Authority, we hold that this was a *per se* taking.

## III.D

Finally, the Defendants assert that the Plaintiffs' claims are barred by the statute of limitations. We disagree.

Defendants appear to be arguing that the takings claims at issue here can be equated with improper delegation claims that were dismissed on statute of limitations grounds by the District Court in the first federal action. *See R&J Holding Co. v. Redevelopment Auth. of the Cnty. of Montgomery*, No. 02-cv-09530, 2003 WL 22387034, at *6-*9 (E.D. Pa. Oct. 15, 2003), *aff'd*, 165 F. App'x 175 (3d Cir. 2006) (not precedential). They cannot. Plaintiffs' claims here are clearly distinct.

Defendants also cite several pieces of literature arguing that the *Williamson County* "ripeness" label is incorrect and misleading or that plaintiffs should generally only be able to proceed in state court on takings

claims.[9] These arguments are unpersuasive in light of the Supreme Court's repeated description of *Williamson County*'s requirements as a ripeness issue. *See, e.g.*, *Williamson County*, 473 U.S. at 186 ("Because respondent has not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation, respondent's claim is not ripe."). These arguments also ignore the fundamental basis of the *Williamson* opinion: simply put, until just compensation has been denied, an owner has not suffered a constitutional injury and does not have a federal takings claim. *See id.* at 194 n.13 ("[B]ecause the Fifth Amendment proscribes takings *without just compensation*, no constitutional violation occurs until just compensation has been denied.").

As we held in *Whittle v. Local 641, International Brotherhood of Teamsters*, 56 F.3d 487, 489 (3d Cir.

---

[9] *See* Thomas E. Roberts, *Fifth Amendment Taking Claims in Federal Court: The State Compensation Requirement and Principles of Res Judicata*, 24 *Urb. Law*, 479, 501-03 (1992); Thomas E. Roberts, *Facial Takings Claims Under* Agins-Nectow*: A Procedural Loose End*, 24 *U. Haw. L. Rev.*, 623, 634-35 (2002); Douglas T. Kendell et al., *Choice of Forum and Finality Ripeness: The Unappreciated Hot Topics in Regulatory Takings Cases*, 33 *Urb. Law* 405, 407-09 (2001).

2005): "[A] cause accrues when it is sufficiently ripe that one can maintain suit on it." Plaintiffs' takings claim did not accrue until the Pennsylvania Supreme Court denied review in the second state action on March 21, 2006. *See R&J Holding Co. v. Redevelopment Auth. of the Cnty. of Montgomery*, Nos. 1018 &1019 MAL 2005 (Pa. Mar. 21, 2006). Because this action was filed on April 21, 2006, it is of no moment whether we adopt the statute of limitations put forward by the Plaintiffs (twenty-one years) or the statute of limitations put forward by the Defendants (two years). The action is timely.

## III.D

In light of its dismissal of the federal claims, the District Court properly declined to exercise jurisdiction over Plaintiffs' state law claims. But "[s]ince we will reinstate [Plaintiffs' federal claims], we must vacate that portion of the district court's order dismissing without prejudice [Plaintiffs'] pendent state law claims . . . . The standard for exercising discretion to dismiss state claims pendent on a viable federal claim differs from the standard governing dismissal when the federal claim itself lacks merit." *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990).

29

## IV

We conclude that Plaintiffs' suit cannot be barred on the grounds of claim preclusion, issue preclusion, failure to state a claim, or the statute of limitations.

This is the latest in a long series of actions following the condemnation of a single piece of property. We are aware that the parties and the courts have expended substantial resources over the years in efforts to resolve the underlying dispute. But the Plaintiffs – having reserved their federal rights in state court and having received no objection from the Defendants – are entitled to a federal forum for their federal claims.

We will reverse and remand to the District Court for further proceedings consistent with this opinion.[10]

---

[10] Citing *United States v. Bodcaw*, 440 U.S. 202 (1979), the Dissent asserts that a remand would be futile because the damages sought by the Plaintiffs exceed the scope of damages available to them under the Fifth Amendment. We disagree. Just compensation is limited to damages sought "for the property," *id.* at 203, and thus *Bodcaw* excluded appraisal fees incurred in a condemnation action from the scope of just compensation, *see id.* at 204. Such indirect costs are not the result of an impairment of property rights. But here Plaintiffs seek

compensation for their inability to fully utilize, develop, and sell their property. There can be no question that these are rights inhering in the property itself, unlike the indirect costs excluded by *Bodcaw*. To the extent some of Plaintiffs' claims seek both direct and indirect costs, we leave it to the District Court to consider the scope of those claims and, if appropriate, to limit them.

*R&J Holding Company, RJ Florig Industrial Company, Inc.*
*v. The Redevelopment Authority of the County of*
*Montgomery*, No. 10-1047.

Nygaard, J. *Dissenting*.

In its singular focus upon R.J. Florig's procedural machinations, I believe the majority has erred. Three conclusions compel my dissent: 1.) R.J. Florig's federal claims have been waived; 2.) the issues raised in the federal claims have been conclusively addressed by the state court; and 3.) the lack of a federal remedy moots the federal claims.

The Pennsylvania Eminent Domain Code "is intended . . . to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor. . . ." 26 P.S. § 1-303 (1996). In that vein, the Code states that "[a]ll preliminary objections shall be raised at one time and in one pleading." 26 P.S. § 1-406(c) (1996). Moreover, "[f]ailure to raise these matters by preliminary objections shall constitute a waiver thereof." 26 P.S. § 1-406(a) (1996). The Commonwealth Court said that "preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages." *In re Condemnation by City of Coatesville*, 898 A.2d 1186, 1189 n. 7 (Pa. Cmwlth. 2006). The problem, however, is that R.J. Florig never raised its federal claims. Rather, it stated in a footnote to its preliminary objections:

> R.J. Florig Company is not
> presenting in this case its federal

1

> constitutional and civil rights
> claims, including the claims that
> the actions of the Authority and
> others constitute a taking of
> private property for purported
> public use without just
> compensation and a deprivation of
> property without due process of
> law in violation of the Fifth and
> Fourteenth Amendments of the
> Unites States Constitution. R.J.
> Florig Company reserves its right
> to litigate these federal claims in
> federal court.

Preliminary Objections, p. 2 n. 1. While R.J. Florig declared that it was "not presenting" its claims, the Code does not authorize parties to make such a choice. They are limited by the law. See § 1-406(c). By the terms of the Code, R.J. Florig's failure to raise these claims in its preliminary objections must be regarded as a waiver of those claims. Accordingly, R.J. Florig's abandoned federal claims should not have been considered by the District Court.

Moreover, as the District Court determined, the issues raised in R.J. Florig's federal complaint have been conclusively ruled upon in state court. We already affirmed—in an earlier decision—the District Court's denial of R.J. Florig's section 1983 claim as time-barred. In its federal complaint, R.J. Florig premises its remaining federal takings claim by characterizing the Commonwealth Court's holding in its inverse condemnation action as follows:

2

> Plaintiffs pursued just compensation for taking of their property rights in state court under Pennsylvania law <u>but Pennsylvania appellate courts conclusively determined that Pennsylvania does not provide a remedy</u> for taking of Plaintiffs' property rights during the unlawful *de jure* condemnation of their property, regardless of the extent of the taking.

Complaint, ¶ 107 (emphasis added). This statement misconstrues the Commonwealth Court's ruling. The Commonwealth Court determined the following:

> In this case, R & J Holding already received costs and expenses under Section 408 of the Eminent Domain Code. Thus, they are not entitled to any more costs and expenses under any other Section of the Eminent Domain Code because the Code does not require that a condemnee be made whole. Moreover, R & J Holding is seeking damages under 502(e) which only applies when "*no declaration of taking therefor has been filed*". To apply this Section to this case, this Court would have to insert the word

3

"valid" before "declaration of taking." Because a declaration of taking was filed in this case, damages under Section 502(e) are not available to R & J Holding.

*R & J Holding Company v. The Redevelopment Authority of the County of Montgomery*, 885 A.2d 643, 650 (Pa. Cmwlth. 2005) (internal citations omitted). The Commonwealth Court ruled that, because this case originated in a declaration of taking, it is a *de jure* condemnation. R.J. Florig's successful defense against the declaration under the Code's *de jure* provisions enabled it to regain title to its property and receive attorney's fees and costs in the amount of $550,959.73. The Commonwealth Court determined that, having received these remedies, R.J. Florig was not permitted to simply re-label the very same taking as an inverse *de facto* condemnation and go back to court seeking another remedy.

Therefore, the Commonwealth Court did not rule that R.J. Florig was without a remedy. To the contrary, it ruled that the 1996 taking of R.J. Florig's property was conclusively litigated and fully remedied in accordance with the Pennsylvania Eminent Domain Code, and as a result it could not be re-litigated. R.J. Florig wishes to read the decision as pointing to a gap in the scheme of just compensation permitted under the Code when, in fact, the decision closed the door to them. Its federal Fifth Amendment taking claim is, in every respect, the *de facto* condemnation claim raised and dismissed in state court. Res judicata requires that we respect the state court's ruling by affirming the District Court's dismissal of the claim. Therefore, even were we to assume that the federal claims

4

were properly severed from the state claim, res judicata precludes our jurisdiction to consider them again.

Finally, even were we to ignore the relevance of waiver and res judicata to this case, the majority's remand is perplexing because there is simply no remedy available at law. In R.J. Florig's complaint for its federal taking claim, it seeks just compensation for, *inter alia*, their inability to "redevelop, sell, or lease the Florig Property . . . [for their inability to] expand and/or relocate the steel processing business for a period of more than five years . . . [and for] causing plaintiffs to spend thousands of hours in dealing with the imminent threat of condemnation." Complaint, p. 27. The problem is that such damages are not prescribed by the concept of just compensation under the United States Constitution. In fact, the Pennsylvania Eminent Domain Code, under which this case was litigated, provided R.J. Florig with a wider range of relief than is available under federal law.

I agree with the majority that an actual—rather than a *de facto*—taking occurred here because title to the property transferred at the declaration of taking. There can be no other conclusion. This, however, has consequences for the parameters of the constitutional right to just compensation. As the Supreme Court said:

> This Court has often faced the problem of defining just compensation. One principle from which it has not deviated is that just compensation "is for the property, and not to the owner."

5

> As a result, indirect costs to the property owner caused by the taking of his land are generally not part of the just compensation to which he is constitutionally entitled.

*United States v. Bodcaw*, 440 U.S. 202, 203 (1979) (internal citation omitted).  In its analysis, the *Bodcaw* Court spoke of a particular federal statute that, under certain circumstances, authorized attorney's fees and litigation expenses where—as was the case here—"a condemnation action is dismissed as being unauthorized . . . ."  It concluded, however, that "such compensation is a matter of legislative grace rather than constitutional command," and it denied relief presumably because no such statute applied in that case.  *Id.* at 204.  In the same way, R.J. Florig does not cite to, nor can I find any federal statute that would authorize any remedy beyond that which it has already received under the Pennsylvania Eminent Domain Code.  Re-titling this *de jure* action as a *de facto* condemnation does not change this fact.

Alternatively, construing the condemnation as a regulatory taking does not change the analysis.  In circumstances that were analogous to this case, the Supreme Court said the following with regard to a constitutional right to just compensation.

> Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or

6

> develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are "incidents of ownership. . . ."

*Agins v. City of Tiburon*, 447 U.S. 255, 263 n. 9 (1980) (overruled on other grounds in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005)) (quoting *Danforth v. United States*, 308 U.S. 271, 285 (1939)). R.J. Florig was never denied the ability to operate its business, eventually regained title to the property, and ultimately sold it at market value. I see no basis for distinguishing R.J. Florig's multiple claims for damages from "incidents of ownership." As a result, even were we to analogize this case to a regulatory taking, no relief is warranted.

In *Williamson*, the Supreme Court said: "[B]ecause the Fifth Amendment proscribes takings *without just compensation*, no constitutional violation occurs until just compensation has been denied." *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). Here, even if waiver and the doctrine of res judicata are ignored, R.J. Florig has not demonstrated any basis to claim that, by resorting to the remedies available under the Pennsylvania Eminent Domain Code, they have been unjustly compensated. As a result, their claim is moot.

For all of these reasons, I dissent.

7